**PLYMOUTH MFG. CO., Inc. v. UNITED STATES.**

No. 17852.

United States Court of Claims.

Decided Oct. 3, 1949.

O. R. McGuire, Washington, D. C., for the plaintiff, Ivy Lee Buchanan, Washington, D. C., was on the brief.

Gaines V. Palmes, Washington, D. C., with whom was Acting Assistant Attorney General Newell A. Clapp, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

The claim of plaintiff herein, for the payment of which a bill H.R. 6499 had been introduced, was referred to this court under 28 U.S.C.A. § 1492, by Resolution No. 606 of the House of Representatives of the Congress, for a report of the facts and our conclusions thereon "sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant."

Plaintiff corporation has its plant and principal place of business at McColl, South Carolina. It is and at all times mentioned in the findings was engaged in manufacturing light cotton fabrics, consisting principally of bag sheeting for use in making various kinds of bags.

Pursuant to authority of the National Defense Act of June 3, 1916, as amended by the Act of June 4, 1920, 10 U.S.C.A. § 1193, a representative of the Quartermaster Corps, U. S. Army, made a survey of plaintiff's plant in January 1940, as described in findings 5 to 11, inclusive. This was a part of a general survey of the manufacturing industry for the purposes mentioned in the Acts above referred to, towit, the procurement of military supplies in the event of a national emergency. Inspection of plaintiff's plant was made by Major George C. Wynne, Zone Quartermaster, at Atlanta, Georgia. This inspection covered a period of about two hours during which Wynne was taken over the plant. He talked with plaintiff's superintendent and Robert F. Bowe, manager of the gray-goods department of Hesslein & Company, plaintiff's selling agent (finding 7). The Hesslein Company owned all of plaintiff's stock.

As set forth in finding 4, Reeves Brothers, Inc., entered into a contract with the

War Department on November 12, 1940, agreeing to furnish 300,000 linear yards of cotton khaki uniform cloth 36 inches wide, known as Army twill, at 30.8 cents per linear yard. Through the activities of Mr. Bowe of Hesslein & Company, as shown in finding 12, the plaintiff, on November 15, 1940, entered into a subcontract with Reeves Brothers in which plaintiff agreed to manufacture and furnish 140,000 yards of this cloth in accordance with the specifications of Reeves Brothers' prime contract with the Government. Subsequently, on November 26, 1940, this subcontract was increased to 335,000 yards. Subsequently, on December 2, 1940, Reeves Brothers entered into another contract with the Government to furnish an additional amount of 310,000 linear yards of 36-inch uniform cloth at 35.41 cents per linear yard, and immediately thereafter, and on the same day, Hesslein & Company, acting for plaintiff, entered into another subcontract with Reeves Brothers, which cancelled and superseded the subcontract of November 26. In this subcontract of December 2, the amount of cloth which plaintiff agreed to manufacture and furnish Reeves Brothers was increased to 685,000 linear yards (see findings 3 and 4). The prime contracts between Reeves Brothers and the Government required that deliveries be made within certain specified periods and provided for the payment of liquidated damages for delay in making such deliveries.

Plaintiff commenced producing the cloth during January 1941, and by March 26, 1941, it had made shipments aggregating 164,000 yards of Army twill to the finishing plant at Greenville, South Carolina, for processing. Finding 13. The first shipment containing about 30,000 yards was made about six weeks after the commencement of production. The cloth was inspected by plaintiff's inspectors at its plant before being shipped to the bleachery at Greenville, and was inspected at Greenville by defendant's inspectors. Plaintiff's inspectors determined that from 10 to 12 percent of the cloth manufactured did not meet the specification requirements and such material was taken out and rejected prior to shipment.

After the cloth reached the bleachery at Greenville, about 88.5 percent of that received was rejected by defendant's inspectors because of its failure to meet the specification requirements. Of a total of 467,801 yards shipped by plaintiff to the bleachery at Greenville, only 53,973 yards were accepted. Finding 15.

For the reasons set forth in findings 16 to 22, inclusive, plaintiff was unable to manufacture cloth that would meet the specifications of its subcontract with Reeves Brothers. As a result of plaintiff's inability to manufacture cloth meeting the requirements of the specifications, Reeves Brothers, the prime contractor, obtained such cloth elsewhere at a cost in excess of the contract price at which plaintiff agreed to manufacture and deliver such cloth. Plaintiff's total loss as a result of its undertaking to manufacture the Army twill, after allowance of amounts received by plaintiff from the sale of rejected material on hand, amounted to $73,048.46. This amount includes the excess cost paid by plaintiff to Reeves Brothers, the prime contractor, through plaintiff's parent company, Hesslein & Company, of $36,373.30, and liquidated damages paid to Reeves Brothers by plaintiff in the sum of $36,675.16. As shown in finding 23, Reeves Brothers conditionally waived payment by plaintiff to it of $6,483 of the total liquidated damages which it (Reeves Brothers) had to pay to the Government. This last mentioned amount of $6,483 is included by plaintiff in its claim here by reason of the terms and conditions of its settlement agreement with Reeves Brothers.

■ Plaintiff's claim is not within the general jurisdiction of this court for the reason that there was no privity of contract between the defendant and the plaintiff, a subcontractor.

■ We are of opinion, from the facts disclosed by the evidence of record, that plaintiff does not have a legal or equitable claim against the United States for the payment of all or any part of the loss sustained by it under its subcontracts with Reeves Brothers, Inc. Plaintiff predicates its claim that Congress should reimburse it

for its total loss of $79,531.46, primarily upon the ground that the defendant, through Major George C. Wynne, an authorized and designated officer, represented to plaintiff in the letter schedule of production, dated August 27, 1940 (set forth in finding 9), that plaintiff's plant could manufacture a herringbone twill cloth of carded cotton thread woven two up and one down, and otherwise described in said letter schedule. In other words, plaintiff alleges misrepresentations by the defendant that plaintiff's plant was equipped and capable of manufacturing the Army twill fabric called for in the prime contracts of Reeves Brothers with the Government. In our opinion the record does not support this claim of the plaintiff. The facts show that Major Wynne had had no experience in textile manufacturing and was not an expert on the capacity of looms in the manufacture of cotton fabric, and plaintiff had no reasonable cause to believe that he was representing or making a decision that plaintiff's plant was capable of satisfactorily manufacturing the herringbone twill fabric referred to by him at the time of his inspection of plaintiff's plant, and in the letter of August 27, 1940. Moreover, the evidence indicates that the Army twill, which plaintiff endeavored to manufacture under its subcontract, was not as easy to manufacture with looms such as plaintiff's plant contained as the herringbone twill cloth referred to in the letter of August 27, supra. The proof shows that plaintiff's looms were too light to manufacture the cloth called for by its subcontract. Major Wynne made only a cursory inspection of the plaintiff's plant and equipment, and during such inspection discussed with plaintiff's superintendent Johnson, and Robert F. Bowe, manager of the gray-goods department for Hesslein & Company, plaintiff's parent corporation, the normal production of the plant, as well as the various types of fabric which might be desired by the Government in the event of a national emergency. He requested Johnson, plaintiff's superintendent, to express his views on the ability of the plant to manufacture certain fabrics. As a result of the information obtained,

Wynne, as hereinbefore stated, prepared a tentative schedule of production which he sent to various manufacturers, including plaintiff, for the purpose of verifying the information which he had obtained. This letter, or proposed schedule of production, contained a provision calling for the expression by plaintiff of its opinion as to whether or not it could manufacture the herringbone twill cloth, and plaintiff signed and returned the schedule, stating that "This firm is of the opinion that, if called upon to do so, it could meet the production shown on this schedule in the event of a national emergency."

We cannot find from the evidence that Wynne made any statement to plaintiff's representatives that he was experienced in the manufacture of textiles or that any inquiry was made of him in that respect by any one at plaintiff's plant. Nor can we find from the evidence that Major Wynne made any statement to plaintiff's officers which would in any way justify them in believing that he had formed an opinion as to the type of cloth that plaintiff's plant was capable of manufacturing. We think it is significant that no claim of misrepresentation by Wynne was made by plaintiff until about eight years after plaintiff found that it could not manufacture acceptable cloth.

We are of the opinion that the proof submitted by plaintiff is clearly insufficient to establish that it has a valid, legal or equitable claim for reimbursement by defendant of the losses sustained by it, or that it has a valid claim based upon the broad principles of equity and justice, such as were considered and discussed in United States v. Realty Company, 163 U.S. 427, 440–443, 16 S.Ct. 1120, 41 L.Ed. 215; and Lamborn and Company et al. v. U. S., 65 F.Supp. 569, 106 C.Cl. 703. In view of the facts as we view them, any payment by Congress upon the claim of plaintiff would be a gratuity.

Plaintiff further says that if Major Wynne's actions in making the survey of its plant and in sending the schedule of production letter of August 27, did not amount to a misrepresentation, there was certainly a mistake made by him in assigning the her-

ringbone twill cloth, of the construction specified, to plaintiff's plant because the plant machinery could not manufacture it, and that in equity the defendant should relieve plaintiff of its loss. Our discussion of plaintiff's claim of misrepresentation applies equally to the claim that Wynne made a mistake of fact which was material to the object in view and which controlled the conduct of plaintiff's officers in making the subcontract with Reeves Brothers.

We have found that Wynne did not purport to make a decision, factual or otherwise, that plaintiff's machinery was adequate satisfactorily to manufacture the herringbone twill cloth. He simply examined plaintiff's plant, found that plaintiff was engaged in manufacturing cotton fabric, explained to plaintiff's officers the type of cloth in which the Government might be interested in having manufactured, and sent plaintiff a tentative production schedule letter asking plaintiff to state whether in its opinion it could manufacture such cloth. Plaintiff was the one who made the mistake in saying that it was of the opinion that it could manufacture such cloth. It was free to say that, in its opinion, it was not equipped to do so. While Wynne had authority to make a survey of industrial plants within his jurisdiction, he clearly had no authority to bind the Government with respect to matters such as are here involved. Moreover, plaintiff was never called upon by the Government or any one to manufacture herringbone twill cloth and the evidence shows that, to some extent at least, this cloth was less difficult to manufacture than the Army twill which plaintiff endeavored but failed to manufacture. It cannot be said that Wynne was guilty of

misrepresentation or made a material mistake of fact upon which the plaintiff was justified in relying and which actually controlled its judgment, when Wynne, at the time of his survey, and plaintiff, at the time it signed the proposed schedule of production, had no thought, so far as the record shows, concerning the manufacture of Army twill. The inspection standards for Army twill were much higher than they were for herringbone twill referred to in Wynne's letter of August 27, 1940, and we are not convinced that plaintiff would have failed if it had undertaken to manufacture the herringbone twill cloth.

Plaintiff's claim based on mistake cannot be sustained.

Plaintiff also claims that defendant has been unjustly enriched, and that it should be reimbursed for its losses on that ground. We cannot find where the defendant has received any benefit from plaintiff's attempt to manufacture the cloth called for by the prime contracts. There is no evidence that the prices stated in the prime contracts between Reeves Brothers, Inc., and the Government were in any way affected by any commitment made by plaintiff to Reeves Brothers, prior to the making of the prime contracts. Plaintiff's subcontracts with Reeves Brothers were made after that company had entered into the prime contracts with the Government. Under the prime contracts Reeves Brothers, Inc., was free to secure the cloth called for thereby from any source it saw fit to select.

The foregoing special findings of fact, conclusion of law, and opinion, will be certified to the House of Representatives of the Congress, in accordance with Resolution No. 606.